# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **SHAKIYLA CARTER** <br> Individually and as Personal Representative/Administrator of the Estate of Richard Carter, Deceased <br> 39 Meadowbrook Road <br> North Wales, PA 19454 <br>       Plaintiff, <br> **v.** <br><br> **DAUPHIN COUNTY d/b/a DAUPHIN COUNTY PRISON** <br> 501 Mall Road <br> Harrisburg, PA 17111 <br><br> and <br><br> **GREGORY BRIGGS** <br> Individually and in his official capacity as Warden Dauphin County Prison <br> 501 Mall Road <br> Harrisburg, PA 17111 <br><br> and <br><br> **PRIMECARE MEDICAL INC.** <br> 3940 Locust Lane <br> Harrisburg, PA 17109 <br><br> and <br><br> **JOHN DOE, PERSONAL REPRESENTATIVE/EXECUTOR FOR THE ESTATE OF DR. ROBERT NICHOLS, DECEASED** <br> Individually and in his official capacity as Lead Psychologist at Dauphin County Prison <br> Primecare Medical Inc. <br> 3940 Locust Lane <br> Harrisburg, PA 17109 <br><br> and <br><br> **BRENT BAVINGTON** | Civil Action No. 1:23-cv-01867- KM-DFB <br><br><br><br><br><br><br> JURY TRIAL DEMANDED |

| | |
|---|---|
| Individually and in his official capacity as President of Primecare Medical Inc. 3940 Locust Lane Harrisburg, PA 17109 | : : : : : |
| and | : : |
| **JENNIFER LOCKLIER** Individually and in her official capacity as Employee and Labor Relations Manager Primecare Medical Inc 3940 Locust Lane Harrisburg, PA 17109 | : : : : : : : |
| and | : : |
| **DEREK HUGHES** Individually and in his official capacity as Vice President of Business Development Primecare Medical Inc. 3940 Locust Lane Harrisburg, PA 17109 | : : : : : : : |
| and | : : |
| **JUSTIN LENSBOWER** Individually and in his official capacity as Health Services Administrator Primecare Medical Inc. 3940 Locust Lane Harrisburg, PA 17109 | : : : : : : : |
| and | : : |
| **EMILY SCORDELLIS** Individually and in his official capacity as Director of Behavioral Health Primecare Medical Inc. 3940 Locust Lane Harrisburg, PA 17109 | : : : : : : : |
| Defendants. | |

# **FIRST AMENDED COMPLAINT**

1. Plaintiff, Shakiyla Carter (Individually and as Personal Representative/Administrator of the

Estate of Richard Carter, Deceased), is the daughter of Richard Carter.

2. Richard Carter (hereinafter "the decedent"), was an adult male in the custody of Dauphin County. At all times material, Decedent was incarcerated at Dauphin County Prison.

3. Defendant, Dauphin County d/b/a Dauphin County ("Dauphin"), is a prison that, at all times material herein, acted in their official capacity.

4. Defendant, Gregory Briggs ("Briggs"), is an adult individual who, at all times material herein, acted individually and in his official capacity as, Warden.

5. Defendant, PrimeCare Medical, Inc., ("Primecare") is a Pennsylvania limited liability, for profit corporation doing business at all times pertinent to this Complaint, inter alia, at the above facility in Dauphin County. At all times material to the allegations of this Complaint Primecare, a vendor, contracted with the county for the provision of medical and health services, and was responsible for providing prison health services and appropriate and timely care and treatment to inmates, and generally protecting the medical welfare of inmates at various facilities in Pennsylvania, the correctional institute where Decedent had been housed.

6. John Doe, personal representative/executor for the estate of Defendant, Dr. Robert Nichols ("Nichols"), now deceased, was an adult individual who, at all times material herein, acted individually and in his official capacity as Lead Psychologist.

7. Defendant, Brent Bavington ("Bavington"), is an adult individual who, at all times material herein, acted individually and in his official capacity as President of Primecare.

8. Defendant, Justin Lensbower ("Lensbower"), is an adult individual who, at all times material herein, acted individually and in his official capacity as Labor Relations Manager of Primecare.

9. Defendant, Derrick Hughes ("Hughes"), is an adult individual who, at all times material herein, acted individually and in his official capacity as Vice President of Business Development of Primecare.

10. Defendant, Emily Scordellis ("Scordellis"), is an adult individual who, at all times material herein, acted individually and in her official capacity Director of Behavioral Health of Primecare.

## JURISDICTION AND VENUE

11. The above paragraphs are incorporated herein by reference.

12. Jurisdiction over the matter is conferred upon the Court by 28 USC § 1331, as the cause of action arises under federal law.

13. Venue is proper in this district pursuant to 28 U.S.C. § 1391, because a substantial part of the events giving rise to this action occurred in this judicial district.

## OPERATIVE FACTS

14. The above paragraphs are incorporated herein by reference.

15. Decedent had been incarcerated since in or around December 20, 2022, just four days before his death.

16. Decedent was 63 years old at the time and suffered from, *inter alia*, COPD, which required him to use an oxygen tank to help him breathe.

17. Defendant Nichols often used unreasonable and excessive punitive measures towards inmates who did not comply with the prison's procedures or protocols.

18. Defendant Nichols would improperly place incoming prisoners on "suicide watch" as punishment for not complying with the prison's standard medical intake and evaluation procedures.

19. Prisoners placed on suicide watch are stripped of their clothing and underwear and dressed in a smock made of tear-resistant material. They are then placed in a suicide-resistant cell. They are unable to shower or shave, and sometimes not even given toilet paper for fear that they might use it to harm themselves. Meals arrive without utensils, forcing suicidal people to eat foods like pasta and rice with their hands.

20. In the early morning hours of December 20, 2022, Decedent was remanded to Dauphin County Prison for inmate processing on a contempt charge.

21. Defendant Nichols was responsible for providing mental health evaluation services to Decedent that day.

22. Defendant Nichols was informed that Decedent was not cooperating with prison officials during the medical intake process.

23. Defendant Nichols, without performing any mental health evaluation, placed Decedent on suicide watch as punishment.

24. Defendant Nichols had no reason to believe that Decedent was displaying suicidal tendencies or acted in a way during the intake process that warranted placing him on suicide watch.

25. Staff psychologist Dr. Garrett Rosas expressed disagreement of Defendant Nichols's demand to place Decedent on suicide watch as a punitive measure, telling him that it was unnecessary and unsuitable under the circumstances.

26. Defendant Nichols responded to Dr. Rosas' concern for Decedent stating, "Fuck him, he can freeze in that smock."

27. Upon information and belief, Decedent fell ill sometime between December 20, 2022, and December 24, 2022, and was taken to Harrisburg Hospital for treatment.

28. Upon Decedent's return to the Dauphin, he continued to feel unwell and declined medications and food.

29. Dauphin continued to keep Decedent on medical watch.

30. Decedent was given nothing but a green safety vest to wear.

31. On December 24, 2022, Decedent was found unresponsive in his cell and was pronounced dead at 12:54 am.

32. December 24, 2022, was one of the coldest days of the year, with temperatures around 24 degrees Fahrenheit.

33. Decedent had informed prison/medical staff earlier that day, that he was not feeling well and was having trouble breathing.

34. Decedent, who was medically weak, who had trouble breathing, was forced to stay in a bare cell on one of the coldest nights of the year, wearing only a thin smock.

35. Decedent's death was a result of Defendants' unnecessary and excessive punishment of leaving a medically fragile inmate in an unsafe environment due to his medical conditions.

36. Defendants, Briggs, Bavington, Lensbower, Locklier, Hughes and Scordellis knew or should have known about the deplorable treatment of Decedent and should have done something about it.

37. It was known throughout Dauphin that Defendant Nichols was unprofessional and verbally abusive towards inmates and staff.

38. Dr. Rosas had expressed his concerns about Defendant Nicols to Defendant Bavington.

39. Upon information and belief, Defendants have a policy, practice, or custom, including failing to render proper medical treatment to prisoners, failing to regulate the temperature in cells appropriately, and failing to provide humane conditions of confinement.

40. Upon information and belief, Defendant Briggs, is the ultimate decision maker regarding the aforesaid policy, practice, or custom.

41. On December 28, 2022, Dr. Rosas sent an email to Defendant Nichols outlining his concerns about Defendant Nichols.

42. In that email, Dr. Rosas told Defendant Bavington about Defendant Nichols's comment regarding Decedent, "Fuck him, he can freeze in that smock."

43. The email also complained of numerous other incidents of inappropriate behavior by medical staff including raising concerns about a suicide. See Exh. A.

44. On or about June 27, 2023, Dr. Rosas brought a civil action in Dauphin County (Case No.: 2023-cv-2671) against Primecare for retaliatory and wrongful discharge under the Pennsylvania Whistleblower Law for opposing and reporting Defendant Nichols' unlawful activity.

45. There have been over 16 inmate deaths at Dauphin County prison since 2019.

46. In many of these circumstances, there have been significant discrepancies between the information officials publicly released and jail records.

47. Upon information and belief, these were caused by inappropriate behavior and/or failure to provide medical care by prison and medical staff at Dauphin County.

48. Some of these deaths include but are not limited to:

    a. **September 18, 2019- Christian Brown, 49**, died of suicide after hanging himself with a laundry bag after not being subject to suicide precautions directed by medical staff. See *Dietrich v. Dauphin County et. al.*, 4:21-cv-01465-JPW-WIA.

    b. **August 20, 2020 – Herbert Tilghman**, 46, officially died of complications from a stomach ulcer. But jail records showed Tilghman saw medical staff for stomach

pains and was returned to his cell untreated. The next day, he collapsed in a shower. Even then, a jail captain wrote that Tilghman might be faking his symptoms. He was dead within 30 minutes.

c. **August 29, 2020 – Jimmy King**, 50, officially died of traumatic brain injury inflicted by his cellmate during a fight weeks earlier. But jail records also noted a second head injury in a second fight two weeks before his death, which was not publicly disclosed. Nor were King's persistent complaints of headaches, dizziness and blurred vision, to which medical staff responded with a worthless head x-ray that couldn't disclose a brain injury, anyway.

d. **July 29, 2021 – Ishmail Thompson**, 29, officially suffered a "medical emergency" at the jail and later died at a hospital. Left unsaid: Guards pepper-sprayed him and forced him into a restraint chair with a spit hood over his head minutes before he lost consciousness for the last time. County Coroner Graham Hetrick said the manner of death was "undetermined." An independent medical examiner called it a homicide. On behalf of his estate, his nephew, John Juan White, filed suit in federal court for the Middle District of Pennsylvania in August 2022, blaming Thompson's death on failures by the prison and its staff, as well as its privately contracted healthcare provide, PrimeCare Medical, Inc. White is represented by attorneys from Abramson & Denenberg in Philadelphia and The Chavez-Freed Law Office, LLC in Harrisburg. See: *White v. Dauphin Cty.*, USDC, (M.D. Pa.), Case No. 1:22-cv-01241.

e. **January 31, 2022, Jamal Crummel, 45-**was found dead after being housed in a cold damp cell (approximately 38 degrees Fahrenheit) with visibly declining health. See: *Crawford v. Dauphin County et al*, 1:23-cv-01380-KM.

49. Upon information and belief, there have been numerous lawsuits against Dauphin County and/or Primecare due to the inhumane treatment of inmates at Dauphin County and/or Primecare by staff and/or Dr. Nichols.

50. In this case, Defendants did not take the proper precautions to make sure that inmates were being treated properly and humanely. It was common for inmates to be treated in an inhumane manner. Upon information and belief, Defendants are the decision makers regarding the aforesaid custom, policy, and/or practice.

51. As a result of Defendants' negligence, Decedent underwent extreme pain and suffering.

52. As a result of Defendants' negligence, the Estate of Richard Carter has sustained significant damages.

## COUNT I.
### VIOLATION-FAILURE TO PROVIDE MEDICAL CARE/FAILURE TO PROTECT/FAILURE TO KEEP SAFE/ CRUEL AND UNUSUAL PUNISHMENT/DELIBERATE INDIFFERENCE
*VIOLATIONS OF 4th, 8th, and 14th AMENDMENTS*

53. The above paragraphs are incorporated herein by reference.

54. Defendants failed to properly provide a safe environment for Decedent,

55. Defendants failed to protect and provide the appropriate medical care to Decedent.

56. Defendants were deliberately indifferent to the constitutional rights of Decedent.

57. Defendants' actions stated above, inter alia, were violations of Decedent's clearly established and well settled Constitutional and other legal rights.

58. Defendants caused Decedent to suffer cruel and unusual punishment in violation of the Fourth, Eighth and Fourteenth Amendments of the United States Constitution, actionable through 42 U.S.C. §1983, et seq.

## COUNT II.
## WRONGFUL DEATH PURSUANT TO 42 Pa.C.S.A. SECTION 8301

59. The foregoing paragraphs are incorporated herein by reference.

60. By negligently, carelessly and recklessly failing to provide Decedent with the appropriate medical care and accommodations, Defendants caused decedent's death.

61. Decedent suffered a painful death as a direct and proximate result of Defendants' negligence and wrongful acts as alleged above.

62. Plaintiff has suffered grief and sorrow, loss of probable support, companionship, society and comfort as a result of her father's wrongful death.

63. Prior to his death, decedent experienced severe emotional trauma and great pain and suffering.

64. That as a direct and proximate result of Defendants' conduct, Plaintiff is entitled to recover damages for the pain and suffering of her father.

## COUNT III.
## MONELL

65. The foregoing paragraphs are hereby incorporated herein by reference.

66. Defendants had a policy of treating inmates in an inhumane and dangerous manner.

67. Upon information and belief, Defendants have a policy, practice, or custom, including failing to render proper medical treatment to prisoners, failing to regulate the temperature in cells appropriately, and failing to provide humane conditions of confinement.

68. Upon information and belief, Defendant Briggs is the ultimate decision maker regarding the aforesaid policy, practice, or custom.

69. Decedent suffered harm due to the Defendants' conduct.

**WHEREFORE,** Plaintiff demands judgment in her favor and against Defendants individually, jointly and/or severally, in an amount in excess of Seventy-Five Thousand ($75,000.00) Dollars, together with interest, costs, punitive damages, attorney's fees and such other and further relief as this Honorable Court deems just, plus injunctive relief.

**WEISBERG LAW**

*/s/ David Berlin*
David A. Berlin, Esq.
Matthew B. Weisberg, Esq.
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **SHAKIYLA CARTER** : | |
| Individually and as Personal : | |
| Representative/Administrator of the Estate of : | |
| Richard Carter, Deceased : | |
| 39 Meadowbrook Road : | Civil Action No. 1:23-cv-01867- KM- |
| North Wales, PA 19454 : | DFB |
| Plaintiff, : | |
| v. : | |
| : | |
| **DAUPHIN COUNTY d/b/a DAUPHIN** : | |
| **COUNTY PRISON, et al** : | |
| : | |
| Defendants. : | |

# CERTIFICATE OF SERVICE

I, David Berlin, Esquire, hereby certify that on this 9th day of February 2024, a true and correct copy of the foregoing First Amended Complaint was served upon all parties via e-filing on the following:

Frank J. Lavery, Jr.
Andrew Norfleet
Lavery Law
P.O. Box 1245
225 Market Street
Suite 304
Harrisburg, PA 17108-1245

John R. Ninosky
Marshall Dennehey, P.C.
100 Corporate Center Drive
Suite 201
Camp Hill, PA 17011

                                             **WEISBERG LAW**

                                              */s/ David Berlin*
                                             David A. Berlin, Esq.
                                             Matthew B. Weisberg, Esq.
                                             *Attorneys for Plaintiff*