

Samuel Abloeser‡
Alan H. Sklarsky†
Of Counsel

Christine Abatemarco‡
David M. Cedar‡†*
Beth G. Cole‡
Ari Goldberger‡†
Dylan T. Hastings‡†
Kevin Haverty‡†*ª
Christopher Markos‡†
Gerald J. Williams‡†ª

‡Member, Pennsylvania Bar
†Member, New Jersey Bar
ªMember, New York Bar

February 20, 2025

Hon. Karoline Mehalchick, U.S.D.J.
William J. Nealon Federal Bldg. & U.S. Courthouse
235 N. Washington Avenue
Scranton, PA 18503
Via ECF                    Re: *Carter v. Dauphin County, et al. (23-cv-1876)*

Your Honor,

    I represent Plaintiff in the above-captioned matter. I am writing to request a conference to resolve a dispute between Plaintiff and Dauphin County about the scope of discovery in this case. Below is a summary of the procedural history that serves as background to this dispute and an explanation of the nature and Plaintiff's positions.

### I. Procedural History

    Written discovery was served on Dauphin County on August 22, 2024. (Ex 1). Since September 22, when the responses were originally due, Plaintiff agreed to a series of extensions, formally to December 10, 2024. After the parties negotiated a confidentiality order, Plaintiff was advised on December 11 that the document production would be "ready to go" once the Court approved and signed the confidentiality order. The Court approved the confidentiality order on December 16. One week later, after 5:00 PM on December 23 - the eve of a long holiday break - Dauphin County served responses to Plaintiff's discovery requests, with the exception of video files, the first of which were not provided until January 8. Additional videos were produced on January 31.

    On January 21, Plaintiff sent a letter to Dauphin County outlining a series of deficiencies with the County's discovery responses. (Ex. 2). Dauphin County sent a response on February 6. (Ex. 3). Meanwhile, Plaintiff requested counsel for defendant provide dates for witness availability to begin depositions, once on January 22 and again February 7. Counsel conferred on Monday, February 17, and chose a series of dates to reserve for depositions. To the extent the Court agrees with Plaintiff's position, discovery would be most



*Certified by the Supreme Court of
New Jersey as a Civil Trial Attorney

○ One South Broad Street, Suite 1510
Philadelphia, PA 19107
215.557.0099

www.williamscedar.com

○ 8 Kings Highway West, Suite B
Haddonfield, NJ 08033
856.470.9777



efficiently concluded with the resolution of the dispute discussed herein before depositions occur. During the February 17 conference, counsel discussed and conferred on a motion for an extension of fact and expert discovery, which motion will be forthcoming.

By way of further background, Jamal Crummel was confined at Dauphin Couty Prison in the winter of 2021-22. During that time, when temperatures reached lows below freezing, he was housed on the same medical unit where Richard Carter would later be housed. Crummel was housed in cell M-7,[1] while Carter was later in cell M-8. Crummel was hospitalized with hypothermia in December 2021, returned to Dauphin County Prison, and later died in January 2022 (Richard Carter's death was December of the same year). The Third Amended Complaint here alleges he had hypothermia when he died, as does Crummel's estate in litigation it is pursuing separately. (That litigation is ongoing in this District under Docket Number 23-cv-1380). In reporting on Crummel's death, Dauphin County District Attorney Fran Chardo acknowledged that "in this particular area, the cells were much lower temperature, and it was because the heating elements were in the corridors, and if you tried to heat it, the corridors would get too hot." Brett Sholtis, Dauphin County jail cells were 'ice cold' days before a prisoner died, June 7, 2022, https://www.witf.org/2022/06/07/dauphin-county-jail-cells-were-ice-cold-days-before-a-prisoner-died/. Chardo has not yet been deposed in this case, but it is Plaintiff's intention to do so.

## II. Issue in Dispute: a Discovery Related to Crummel's Confinement and Death

Plaintiff's discovery requests to Dauphin County sought various information and documents pertaining to the confinement and death of Jamal Crummel. The requests and responses are reproduced below.

---

[1] https://features.witf.org/embeds/wp-content/uploads/sites/15/2022/09/Dauphin_08232022173456-DOC082322.pdf

**Requests for Production**

3. Any statements concerning the death of Jamal Crummel.

**RESPONSE:** Objection. Responding Defendant objects to Request No. 3 to the extent it seeks to invade the Attorney Client Privilege and the Attorney Work Product Privilege. By way of further response, Responding Defendant objects to Request No. 3 as it seeks the production of documents related to Jamal Crummel who is not a party to this action and the request is beyond the scope of the claims made against Responding Defendant in Plaintiff's Third Amended Complaint. Responding Defendant further objects to Request No. 3 as it seeks the disclosure of confidential documents and information without consent from a third party who is not a party to this action.

4. Any reports, including but not limited to the Extraordinary Incident Report, concerning the hospitalization and/or death of Jamal Crummel.

**RESPONSE:** Objection. Responding Defendant objects to Request No. 4 to the extent it seeks to invade the Attorney Client Privilege and the Attorney Work Product Privilege. By way of further response, Responding Defendant objects to Request No. 4 as it seeks the production of documents related to Jamal Crummel who is not a party to this action and the request is beyond the scope of the claims made against Responding Defendant in Plaintiff's Third Amended Complaint. Responding Defendant further objects to Request No. 4 as it seeks the disclosure of confidential documents and information without consent from a third party who is not a party to this action.

5. Any communications between you and the (1) Office of the District Attorney of Dauphin County, (2) the Office of the Attorney General of Pennsylvania, and (3) the Pennsylvania Department of Corrections – including any of their respective employees or agents – concerning the deaths of Jamal Crummel and/or Richard Carter.

**RESPONSE:** Objection. Responding Defendant objects to Request No. 5 to the extent it seeks to invade the Attorney Client Privilege and the Attorney Work Product Privilege. By way of further response, Responding Defendant objects to Request No. 5 as it seeks the production of documents related to Jamal Crummel who is not a party to this action and the request is beyond the scope of the claims made against Responding Defendant in Plaintiff's Third Amended Complaint. Responding Defendant further objects to Request No. 5 as it seeks the production of documents and information relating to an individual not named as a party in this action and seeks the disclosure of confidential documents and information without consent from third parties.

By way of further response and without waiving said objections and as it related to Richard Carter, only, Responding Defendant is currently conducting a search for any responsive communications and upon completion of that search will produce any responsive communications as a supplement to this response.

6. Any communications between you and the Coroner of Dauphin County concerning the deaths of Jamal Crummel and Richard Carter.

**RESPONSE:** Objection. Responding Defendant objects to Request No. 6 to the extent it seeks to invade the Attorney Client Privilege and the Attorney Work Product Privilege. By way of further response, Responding Defendant objects to Request No. 6 as it seeks the production of documents related to Jamal Crummel who is not a party to this action and the request is beyond the scope of the claims made against Responding Defendant in Plaintiff's Third Amended Complaint. Responding Defendant further objects to Request No. 6 as it seeks the production of documents and information relating to an individual not named as a party in this action and seeks the disclosure of confidential documents and information without consent from third parties.

By way of further response and without waiving said objections and as it related to Richard Carter, only, Responding Defendant is currently conducting a search for any responsive communications and upon completion of that search will produce any responsive communications as a supplement to this response.

33. Any report provided to you by the Pennsylvania Department of Corrections regarding Jamal Crummel and/or Richard Carter.

**RESPONSE:** Objection. Responding Defendant objects to Request No. 33 to the extent it seeks the production of documents related to Jamal Crummel, who is not a party to this action and the request is overbroad. Responding Defendant further objects to Plaintiff's request for documents related to Jamal Crummel, as the request requires Responding Defendant to disclose confidential information that is beyond the scope of any claims made against Responding Defendant in Plaintiff's Third Amended Complaint and requires Responding Defendant to produce documents without the consent of a third party. By way of further response without waiving said objections as to Richard Carter, none.

## Interrogatories:

15. Identify anyone who answered interrogatories on your behalf in *Crawford v. Dauphin County et al.*, 23-CV-01380 (Middle District PA).

**ANSWER:** Objection. Answering Defendant objects to Interrogatory No. 15 to the extent it seeks to invade the Attorney Client Privilege and the Attorney Work Product Privilege. By way of further objection, Answering Defendant objects to Interrogatory No. 15 as it seeks information beyond the scope of the claims in Plaintiff's Third Amended Complaint. By way of further objection, Answering Defendant objects to Interrogatory No. 15 as the request requires Answering Defendant to produce confidential information related to an individual not a party to this action.

16. Identify anyone who was deposed in the same case.

**ANSWER:** Objection. Answering Defendant objects to Interrogatory No. 16 to the extent it seeks to invade the Attorney Client Privilege and the Attorney Work Product Privilege. By way of further objection, Answering Defendant objects to Interrogatory No. 16 as it seeks information beyond the scope of the claims in Plaintiff's Third Amended Complaint. By way of further objection, Answering Defendant objects to Interrogatory No. 16 as the request requires Answering Defendant to produce confidential information related to an individual not a party to this action.

Accompanying Plaintiff's January 21 letter was an additional request for production for the internal cell temperatures in December 2021 and January 2022 for cells M-7 and M-8. The County had indicated no internal cell temperature data was available during the time of Carter's incarceration. M-7 was where Crummel was housed, and M-8 was where Carter was housed. Dauphin County responded in its February 6 letter: "Plaintiff's request related to internal cell temperatures in cell M-7 is not relevant to the claims set forth in Plaintiff's Complaint. Likewise, Plaintiff's request for cell temperature data for periods when Mr. Carter was not housed at the Dauphin County Prison is beyond the scope of the claims set forth in Plaintiff's Complaint."

The County's opposition to the above requests have shifted over time. For example, the County took the position that producing documents relating to Crummel required his estate's authorization. Such a position is consistent with the official form for release of records published by the Department of Corrections, which requires a releasee to "explicitly waive any and all rights I may have to the confidential maintenance of these records." (Exhibit 4). So, along with Plaintiff's January 21 letter, Plaintiff provided the County with releases executed by Crummel's estate. The County responded in its February 6 letter that, "[b]ecause the litigation in the Crummel case is ongoing, the documents in that case are subject to a confidentiality agreement similar to the agreement in place here."

An examination of the docket for the Crummel litigation indicates that motions to dismiss are pending and no Rule 16 conference has occurred or yet been scheduled. Plaintiff's counsel then spoke with counsel for the Crummel Estate, who confirmed that he has not entered into any confidentiality agreement in that case. Likewise, in its February 6 letter, the County asserted that "the identity of the individuals *who responded* to interrogatories on behalf of the County in ongoing litigation … is not relevant to Plaintiff's claims." (Emphasis added). But counsel for the Crummel Estate further confirmed that no discovery, including interrogatories, have yet been served or otherwise exchanged. Rule 26 mandates that initial disclosures be made 14 days after a Rule 26(f) conference, which is to take place at least 21 days before a Rule 16 conference, which, again, has not yet been scheduled. The County's shifting positions here, predicated on demonstrably false premises, thus does not withstand even the lightest scrutiny. (Ex. 6).

Other than its unbelievable claims about confidentiality, the County's objections to discovery pertaining to Crummel are, essentially, that it is either not relevant or not calculated to lead to the discovery of relevant evidence. Those objections simply do not make sense, and are plainly contrary to well established legal principles.

To establish an unconstitutional custom under *Monell*, a plaintiff may prove the "existence a practice that was so well-settled and widespread that the policymaking officials of [municipality] either knew of it or should have known of it." Third Circuit Model Jury Instructions, Ch. 4.6.6. Thus, "[c]ustom . . . can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990). A plaintiff can present evidence of a pattern of similar incidents and inadequate responses

to those incidents in order to demonstrate custom through municipal acquiescence. *See Beck v. City of Pittsburgh*, 89 F.3d 966, 972 (3d Cir. 1986) ("These complaints include the Debold incident, which, although it occurred after Beck's experience, may have evidentiary value for a jury's consideration whether the City and policymakers had a pattern of tacitly approving the use of excessive force."). In other words, what a municipal defendant knew and when it knew it are essential elements of a *Monell* claim, and like any claim, can be supported by both direct and circumstantial evidence.

Thus, courts recognize that the nature and legal requirements of *Monell* claims warrant a broader scope of discovery. *McCoy v. City of Philadelphia*, No. CV 19-1648, 2023 WL 4108834, at *2 (E.D. Pa. June 20, 2023) (In *Monell* cases discovery is often broad in scope and burdensome on municipalities) (citations omitted); *Furey v. Wolfe*, 2011 WL 597038, at *2 (E.D. Pa. Feb. 18, 2011) ("The presence of a Monell claim entitles Plaintiff to discovery beyond the scope of the April 5, 2008, incident...."); *see also Green v. Meeks*, 2023 WL 1447817, at *8 (S.D. Ill. Feb. 1, 2023)("Plaintiff must be allowed broad discovery into the treatment of other inmates, including inmates who did not suffer from the exact same medical issues as the plaintiff. The Court will not limit the scope of discovery to information only pertaining to Green's specific medical conditions.").

In Monell cases, it is typically necessary to introduce evidence of a prior pattern of similar constitutional violations to show notice to the municipal defendant. *See Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 407–08, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997); *Corbin v. Bucks Cnty.*, 703 F. Supp. 3d 527, 537 (E.D. Pa. 2023) ("[P]rior instances of prison overdoses would be strong circumstantial evidence that BCCF personnel were knowingly disregarding a grave risk to inmate safety...."); *Groark v. Timek*, 989 F.Supp.2d 378, 398-99 (D.N.J. 2013) (discussing and permitting pre-incident *Monell* discovery); *Costantino v. City of Atlantic City*, 152 F.Supp.3d 311, 322-23 (2015) (noting that a Plaintiff cannot be denied all discovery relating to prior incident because that would effectively strike the *Monell* claim) (ordering production of over 10 years of files on prior incidents).

Evidence of prior related incidents are probative of a defendant's deliberate even where those prior incidents are not themselves constitutional violations, because the frequency of occurrences – like here, failing to properly heat cells or identify symptoms of hypothermia - coupled with the likelihood that mishandling the occurrence will result in a constitutional wrong, is evidence of deliberate indifference. *See Thomas v. Cumberland County*, 749 F.3d 217, 225 (3d Cir. 2014); *Reid v. Cumberland County*, 34 F. Supp. 3d 396, 403-04 (D.N.J. 2013) (permitting prior incident *Monell* discovery dating back several years).

The complaint framed the claims in this case as closely tied to the Crummel incident, and for several important reasons. One is that Crummel's death and the circumstances surrounding it were on the minds of defendant when Carter died under similar conditions. Compl. 67-68. Another is that, by virtue of Crummel's declining health and death, the county was aware of the similar conditions that Carter would and did experience. Compl. 37-40. The complaint further

alleges that the facts and circumstances of Crummel's declining health and death are evidence of the county's deliberate indifference, a requisite for *Monell* liability. Compl. 91. That the cases are similar is further borne out by a number of facts: (1) the non-sequitor comment in emails discussing Carter's death and planning for a Mortality Review that "the only thing [Warden Briggs] said was that is shouldn't be from hypothermia…" in response to a question he had mentioned a cause of death had been determined (Ex. 5) – logically, it makes little sense to even consider hypothermia as a possibility but for the obvious similarities between Crummel's and Carter's deaths; (2) the fact that the County is relying on the Coroner's findings to support its claim that the cases are unrelated when the Coroner is a County official, and thus a biased witness; (3) the County's statement when Carter died on one of the coldest days of the year (a year in which Crummel's death had received significant news coverage) that Carter's cell temperature was scanned "immediately" after Carter's medical distress began when it in fact took place at least 40 minutes later (Complaint ¶68); and (4) statements from Dr. Nichols ("Fuck him, he can freeze in that smock.") and Fran Chardo ("[I]n this particular area, the cells were much lower temperature, and it was because the heating elements were in the corridors, and if you tried to heat it, the corridors would get too hot.")

The County did suggest in its February 6 letter that it might reconsider its positions *if* Plaintiff can obtain records from other sources (other than medical records from Primecare, the records sought are the county's), and then demonstrate to the County's satisfaction that the cases are essentially identical. Not only is the precondition imposed entirely tautological, especially if the County is taken at its word that its documents are "confidential," it also comprises the unilateral imposition of some ill-defined and baseless evidentiary standard as a requirement to obtain discovery, such that it cannot be characterized as a good faith effort to compromise these disputes. In that letter, Dauphin County further asserts that the cases of Carter and Crummel are not the same, but that argument is a red herring because expanding the scope of discovery to facilitate the *Monell* claim should not be limited to prior incidents that square exactly with Carter's. *See Green*, *supra*. It is not necessary that Plaintiff establish that both Crummel and Carter endured the exact same conditions and died from the exact same causes, but the similarities in their experiences would evidence that by the time of Carter's incarceration it was aware it was not able to provide sufficient heat to his cell.

As such, it is plain that there is no legitimate basis for the County's position that information related to Crummel is beyond the scope of this case. For the reasons set forth above, the entire premise of the County's objections to discovery involving Crummel lacks any legal basis. The discovery sought is narrowly targeted and limited in scope, though the authority cited herein clearly supports broader efforts than those currently at issue. Any County official who verifies discovery responses in the Crummel litigation, once that occurs, would be someone with discoverable information about Crummel's incarceration and death. The temperatures for cells M-7 during the time when (1) the data existed and (2) when Crummel was there is probative of what the County knew and when they knew it about the environmental conditions on that block, and when correlated with cell M8 and other facts like Fran Chardo's statement would further demonstrate that lack of heat in the prison was not unique to a particular cell but was more

widespread, as well as the extent of the County's knowledge of same. That and other information sought about Crummel, importantly, is essential to showing that the County was deliberately indifferent about the conditions to which it eventually subjected Carter, such that not permitting discovery into Crummel's incarceration and death would be highly prejudicial to the *Monell* claim as it would foreclose Plaintiff's ability to put forward evidence of the County's knowledge of the cold conditions to which it subjected those in its custody. The discovery sought here is not purported to be burdensome. As set forth more fully above, discovery related to Crummel is clearly within the scope of permissible discovery in a *Monell* case such as this. Nor would permitting this discovery prejudice defendant's ability to raise arguments about relevancy before trial.

### III. Conclusion

For the reasons set forth herein, it is Plaintiff's position that the scope of discovery in this case can and should include the 2021-22 incarceration and death of Jamal Crummel while in Dauphin County's custody, with any issues of relevancy that defendant wishes to raise be reserved for pretrial motions.

Very respectfully,

*/s/ CHRISTOPHER MARKOS*
Christopher Markos
Attorney for Plaintiff

cc: All counsel (via ECF)