

225 Market Street
Suite 304
Harrisburg, PA  17101-2126
**PHONE:**  717-233-6633
**FAX:**  717-233-7003
www.laverylaw.com

February 28, 2025

**VIA ECF ONLY**

The Honorable Karoline Mehalchick
United States District Judge
William J. Nealon Federal Building and United States Courthouse
235 N. Washington Avenue
Scranton, PA 18503

        **Re:   Estate of Richard Carter v. Dauphin County, et al.
              1:23-cv-1867**

Judge Mehalchick:

      We represent Dauphin County and Tsaurayi Deredza.  We offer this correspondence in response to Your Honor's Order of February 24, 2025 (DOC.70) and in response to the February 20, 2025 letter from Plaintiff's counsel, Attorney Markos (DOC. 67), providing Plaintiff's explanation of a discovery dispute between the parties related to discovery responses produced by Defendant Dauphin County ("the County").

**I.    BRIEF PROCEDURAL HISTORY**

      On February 20, 2025, counsel for Plaintiffs Shakayla Carter, individually and as the administrator of the Estate of Richard Carter ("Mr. Carter") filed a letter with the Court regarding a discovery dispute regarding discovery responses from Defendant Dauphin County.  (DOC.67).  Counsel for the Plaintiff and the County Defendants are scheduled to appear for a telephonic discovery conference on March 4, 2025.  (DOC.70).

On January 21, 2025, Plaintiff forwarded a letter to the County outlining what Plaintiff describes as deficiencies with the County's discovery responses. (See, Ex. 2 to Plaintiff's February 20, 2025 correspondence).[1] The County responded on February 6, 2025, and first outlined the discovery disputes the County believed were resolved by the parties, including a dispute related to the scope of video produced by the County. Because counsel for the Plaintiff could not view the video produced electronically, the County produced the video on a flash drive. *Id.* at pp.2-3.

## II.   BACKGROUND

This case involves a claim brought under 42 U.S.C. §1983 and the laws of Pennsylvania by Shakiyla Carter ("Plaintiff"), whose decedent Richard Carter ("Mr. Carter") died on December 24, 2022, due to complications of COPD. Mr. Carter was detained at the Dauphin County Prison from December 20, 2022, through December 24, 2022. (DOC. 45, ¶11). Plaintiff brought this action against the County, an individual correctional officer, PrimeCare, and a psychologist employed by PrimeCare. (DOC. 45, ¶¶4-7). Plaintiff acknowledges that Mr. Carter suffered from COPD. *Id.* at ¶15. Plaintiff alleges that Defendant Nichols, now deceased, placed Mr. Carter on a Level 1 suicide watch. *Id.* at ¶26. Plaintiff further alleges that Defendant Nichol's decision to place Mr. Carter resulted in Mr. Carter being placed in a suicide prevention smock. *Id.* at ¶30.[2] Without support, Plaintiff alleges that Mr. Crummel "had hypothermia" when he died on January 31, 2022. Id. at ¶38. Without support, Plaintiff alleges that on December 24, 2022, Mr. Carter suffered from "symptoms of a COPD patient's exposure to extreme cold and/or hypothermia." *Id.* at ¶52. Finally, although Plaintiff acknowledges that Mr. Carter's cause of death was "Complications from COPD," Plaintiff adds to the official cause of death "which is consistent with [Mr. Carter's] exposure to extreme cold." *Id.* at 66.

The requests that are in dispute are Plaintiff's Requests for Production:

3.    Any statement concerning the death of Jamal Crummel.

4.    Any reports, including but not limited to the Extraordinary Incident Report concerning the hospitalization and/or death of Jamal Crummel.

---

[1] For judicial economy, the County cite to the documents attached as exhibits to Plaintiff's February 20, 2025 correspondence.

[2] Plaintiff refers to the suicide smock as a "paper smock."

     5.    Any communications between you and the (1) Office of the District Attorney of Dauphin County, (2) the Office of the Attorney General of Pennsylvania, and (3) the Pennsylvania Department of Corrections – including any of their respective employees or agents – concerning the deaths of Jamal Crummel and/or Richard Carter.

     6.    Any communications between you and the Coroner of Dauphin County concerning the deaths of Jamal Crummel and Richard Carter.

     33.    Any report provided to you by the Pennsylvania Department of Corrections regarding Jamal Crummel and/or Richard Carter.

Plaintiff's Interrogatories:

     15.    Identify anyone who answered interrogatories on your behalf in *Crawford v. Dauphin County* et al., 23-cv-01380 (Middle District PA).

     16.    Identify anyone who was deposed in the same case.

## III.   DISCUSSION OF THE DISPUTE

Plaintiff served the County with several requests that are not related to Mr. Carter but are related to another former inmate, Jamal Crummel, who died while in custody at the Dauphin County Prison. Mr. Crummel died in January 2022, nearly a year before Mr. Carter's death. Mr. Crummel's estate is involved in ongoing litigation related to Mr. Crummel's death. (See, MDPA docket number 23-cv-1380). The County is a defendant in the Crummel litigation. On March 11, 2024, this Court lifted the stay in the case to allow the parties to move forward with discovery while certain motions were pending.

Because the circumstances involving Mr. Crummel's death are the subject of ongoing litigation separate from this case, the County objected to Plaintiff's Requests for Production Nos. 3-7, 33 and Plaintiff's Interrogatories Nos. 15,16. The County objected to Plaintiff's requests for production and interrogatories because the County maintains the information requested by Plaintiff is not relevant to Plaintiff's claims related to Mr. Carter. Plaintiff's stated purpose is to discover whether the prison's heating system or its alleged failures, contributed to Carter's death and the extent to which the conditions contributed to Jamal Crummel's death that were known to the County and whether those "conditions" persisted until the

time of Carter's death. These requests are not relevant to Plaintiff's claims and are not reasonably calculated to lead to the discovery of admissible evidence.

The County maintains that the information Plaintiff seeks regarding Mr. Crummel is not relevant to Plaintiff's claims and is not proportional to the needs of Plaintiff's case. Federal Rule of Civil Procedure 26 allows parties to obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). On motion or on its own, the Court may limit the extent of discovery otherwise allowed by the Federal Rules of Civil Procedure. Evidence is considered to be relevant if it has any tendency to make a fact more or less probable than it would be without the evidence and the fact is of consequence in determining the action. *In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*, 325 F.R.D. 551, 2016 WL 3519618, at *3 (E.D. Pa. 2016) (quoting Fed. R. Evid. 401).

While the scope of discovery is broad, it is not unlimited. *See Shiavone v. Luzerne Cty.* 343 F.R.D 34, 38 (M.D. Pa. 2023), citing *Bayer AG v. Betachem, Inc.*, 173 F.3d 188, 191 (3d Cir. 1999). Discovery should not serve as a fishing expedition. *Id.* citing *Upshaw v. Janssen Research & Development, LLC*, No. 11-7574, 2014 U.S. Dist. LEXIS 40303, 2014 WL 1244047, at * 3 (E.D. Pa. Mar. 26, 2014); Fed. R. Civ. P. 26(b)(1).

Many of Plaintiff's requests are overly broad and are unlikely to lead to the discovery of relevant evidence. Specifically:

- Plaintiff's requests (Requests for Production No. 3 and No. 4) for "any statement" and "any report," respectively, concerning the death of Jamal Crummel are not limited in scope. While the County maintains that even statements related to the cause of Mr. Crummel's death are not relevant to this case, Plaintiff did not limit the requests to any statements or reports related to Mr. Crummel allegedly suffering from hypothermia while at Dauphin County Prison;

- Plaintiff's requests for communications with various offices regarding the death of Mr. Crummel (Requests for Production No. 5, No. 6, and No. 33) seek to invade the Attorney-Client Privilege and/or the Attorney Work Product Privilege, if any documents exist. This is especially true when, as Plaintiff acknowledges, the Crummel estate is involved in active litigation related to his death.

4

> Further, as Plaintiff has acknowledged, Mr. Carter's official cause of death was COPD – not hypothermia. If Mr. Crummel's cause of death was related to hypothermia, which the County does not admit, Plaintiff has shown no connection between the two cases.

- Plaintiff's request for the identity of the individual who answered Interrogatories on behalf of the County (Interrogatory No. 15) is not relevant to Plaintiff's claims against the County and is not proportional to Plaintiff's needs in this case. While Plaintiff seems to take exception to the County's use of the phrase ***who responded*** to Interrogatories on behalf of the County in the *Crummel* matter because discovery has not been exchanged, the County notes that responses are ongoing and the identity of ***who responds*** to Interrogatories on behalf of the County in the future (and therefore, ***who responded***) is not relevant to this case. As the County responded to Plaintiff's notice of deficiencies, the County's Interrogatories **in this case** were verified and that information is proportional to Plaintiff's needs; and

- The same is true of Plaintiff's request for the identity of anyone who was deposed in the *Crummel* case. While the parties in *Crummel* have not yet deposed witnesses, the County's duty to respond to Plaintiff's interrogatory is ongoing and the County maintains that the identity of anyone deposed in the *Crummel* case, in the future, is not relevant to this case and is not proportional to Plaintiff's needs. Plaintiff named the PrimeCare psychologist he believes placed Mr. Carter on a suicide watch that required Mr. Carter to be placed in a suicide prevention smock. Likewise, Plaintiff identified the correctional officer he maintains was on duty on the date of Mr. Crummell's death. Therefore, Plaintiff's proportional needs have been met. Plaintiff does not allege that the County refused to answer discovery related to the identities of County employees on duty while Mr. Carter was incarcerated. On the contrary, as Plaintiff notes, depositions have been scheduled, and Plaintiff has identified County employees he intends to depose beyond the correctional officer named as a defendant in this case. The identities of who was deposed in the *Crummel* case, for an incident that occurred nearly a year before Mr. Carter's death are not relevant here.

While the County maintains that those records, to the extent any records are in the County's possession, are not relevant in this case, if the Plaintiff has an authorization signed by the duly appointed representative of Mr. Crummel's estate, he can secure those records from the attorney representing the estate (as Plaintiff acknowledges he is in contact with counsel for Mr. Crummel's estate) or, and this is likely the most direct manner, Plaintiff can serve a request for medical treatment records, with the authorization, to the medical provider.  The same is true of Plaintiff's request for records from the Coroner related to Mr. Crummel.  Plaintiff can take measures (via subpoena) to obtain the autopsy report from sources other than the Defendant.

Although the parties have not exchanged discovery in the *Crummel* case, the County will request the parties to enter into a confidentiality agreement or seek a protective order from the Court related to certain documents in the County's possession.[3]  On December 16, 2024, this Court recognized the Stipulation and Protective Order Governing the Confidentiality of Documents and Information. (DOC. 66).  The Stipulation between the parties includes the following language:

2. The Proprietary/Confidential Documents or any part of them may be used only in connection with this action, and not for any other purpose. Likewise, the information contained in the Proprietary/Confidential Documents shall be preserved and not disclosed.  Further, neither the Proprietary/Confidential Documents may be disclosed to anyone except as provided in this Confidentiality Stipulation/Agreement.

3. The Proprietary/Confidential Documents and any copies or excerpts of it may be made available only to the following:

   a. Counsel of record for the receiving party engaged in the proceedings to this action and their employees and the parties to this action;

   b. The Court in this proceeding, including all of its legal and clerical personnel, or any judicial body before which this action is subsequently pending;

---

[3] In its correspondence of February 6, 2025, counsel for the County erred in stating the confidentiality agreement has been signed in *Crummel*.  Instead, counsel should have made it clear that the County will request the parties enter into a confidentiality agreement or will seek a protective order related to certain documents in the County's possession.

      c. Experts or consultants retained to assist in this litigation;

      d. Representatives of the parties to this action who are actively involved in assisting counsel and who agree, by signing an acknowledgment as provided for in the following section of this order, to use the information solely for the purposes of this action; and

      e. Any other persons mutually agreed to in writing by the parties and who agree to use the information solely for the purposes of this action.

The County uses the same stipulation between the parties in each case that involves sensitive information related to an individual's death and to maintain the safety and security of the inmates and staff at the Dauphin County Prison. The County maintains that any document production in *Crummel* will be subject to the same (or substantially similar) confidentiality agreement used here, or the County will seek a protective order when necessary. If the County discloses any relevant documents related to Mr. Crummel's death, if any exist, the disclosing the documents to a third party (Mr. Carter's estate) would likely render a future request for a confidentiality agreement between the parties (or a protective order) moot.

Plaintiff maintains the information related to Mr. Crummel is relevant to Plaintiff's *Monell* claim against the County. Plaintiff relies on *Beck v. City of Pittsburgh*, 89 F.3d 966, 972 (3d Cir. 1986) to support the position that a plaintiff can present relevant evidence as a pattern of similar incidents and inadequate responses to those incidents to demonstrate custom through municipal acquiescence. First, the court in *Beck* examined evidence of other wrongs or acts and the limits on the admissibility of those other wrongs or acts. *Id.* Further, the plaintiff in *Beck* alleged that a particular police officer exhibited a pattern of violent and inappropriate behavior with five complaints of excessive force in less than five years. *Id.* While the court was reiterating the plaintiff's argument related to the relevance of the officer's alleged history of violence, the plaintiff pointed to five incidents of the same or similar conduct by the same officer. Here, Plaintiff seeks information in discovery related to one other event (Mr. Crummel's death) he alleges is similar to the circumstances involved in Mr. Carter's death. *Beck* is not analogous to this case.

7

Plaintiff also relies on *Furey v. Wolfe*, 2011 WL 597038, at *2 (E.D. Pa. Feb. 18, 2011) for the proposition that the presence of a *Monell* claim entitles a plaintiff to discovery beyond the scope of the incident involving the plaintiff. (DOC. 67, p.7). Like Beck, Furey involved claims of excessive force, as well as false arrest and malicious prosecution. *Furey* at *6. The court rejected the plaintiff's argument that all allegations of police misconduct were relevant to his claim and was persuaded that discovery of a broad category of investigations would be overbroad. *Id*. The court also noted that while the plaintiff argued that he was entitled to "any studies, investigations regarding the police department either inter-department or extra-departmental", the court found the request overbroad and should be limited to founded incidents of excessive force, false arrest, and perjury. *Id*. at *8. Following the same analysis, Plaintiff should only be permitted to discover documents related to Mr. Crummel if it was alleged that he died as a result of complications from COPD, which is not alleged. Likewise, only Plaintiff's conclusory statements suggest that Mr. Carter's death was caused by hypothermia or by complications of hypothermia. Without more, Plaintiff is impermissibly searching for information that is not relevant or proportional to his claims.[4]

### III. CONCLUSION

Plaintiff has failed to demonstrate why discovery requests to the County related to Mr. Crummel are relevant and proportional to this case. Instead, Plaintiff's requests are intentionally overly broad to allow Plaintiff to pursue unsubstantiated theories of liability against the County. There is no evidence that suggests Mr. Carter died of hypothermia or that hypothermia was a contributing factor in his death. Plaintiff cites the autopsy report that finds Mr. Carter died of complications from COPD and the cause of death was natural. (see, DOC. 45, ¶65). There is no mention of hypothermia as the cause of death or a contributing factor.

Very truly yours,
*/s/ Frank J. Lavery, Jr.*
Frank J. Lavery, Jr.

---

[4] Plaintiff also relies on *Reid v. Cumberland County*, 34 F. Supp. 3d 396, 403-404 (D.N.J. 2013). (DOC. 67, p. 7). Reid also involved claims of excessive force. The plaintiff alleged that the County failed to address past instances of excessive force – relevant to his claims that correctional officers used excessive force against him. *Id*. at 400.