WILLIAMS CEDAR
By: Christopher Markos, Esquire
PA Id. No. 308997
One South Broad Street
Suite 1510
Philadelphia, PA 19107
P: 215-557-0099
F: 215.557.0673
cmarkos@williamscedar.com

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| Shakiyla Carter, Administrator of the | : | |
| Estate of Richard Carter, Deceased, | : | CIVIL ACTION |
| Plaintiff | : | |
| | : | |
| v. | : | NO. 1:23-cv-1867 |
| | : | |
| Dauphin County d/b/a | : | |
| Dauphin County Prison, et al., | : | |
| Defendants. | : | JURY TRIAL DEMANDED |

# PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HER UNOPPOSED MOTION TO APPROVE THE ALLOCATION OF THE SETTLEMENT TO THE SURVIVAL ACTION

## I. FACTS

The parties attended a settlement conference before Chief Magistrate Judge Bloom on February 27, 2026 At this conference, the parties reached an

agreement, facilitated by Judge Bloom, to settle, wherein defendants agreed to pay a cumulative total of $60,000, inclusive of attorneys' fees and costs, to resolve all claims.

## II. LEGAL ARGUMENT

For the following reasons, Plaintiff proposes that the Court approve an allocation of 10% of the net proceeds of the settlement to the survival action.

a. Applicable Legal Standards

20 Pa.C.S. §3323 requires court approval of any settlement involving claims brought on behalf of or against an estate. *See Schuster v. Reeves*, 589 A.2d 731, 734 (Pa. Super. Ct. 1991) ("The survival action ... was a claim on behalf of the decedent estate, and it could not be settled without court approval. Without such approval the attempt to settle and release the estate's claims was ineffective."); *Moore v. Gates*, 580 A.2d 1138, 1141 (Pa. Super. Ct. 1990) ("Before a survival claim can be settled on behalf of a decedent's estate, ... such a settlement must be judicially approved.").

Court approval of survival actions protects the estate, as well as its creditors and beneficiaries, and "a court may refuse to approve a settlement of a survival action which is inadequate." *Id.* at 1141. "It follows that where wrongful death and survival actions are settled for a single amount, the amount apportioned to the

survival action must be approved by a court having jurisdiction." *Moore*, 580 A.2d at 1141.

This Court has jurisdiction to rule on the appropriateness of the parties' proposed settlement agreement under 20 Pa.C.S. §3323(b), which states: "Whenever it is desired to compromise or settle an action in which damages are sought to be recovered on behalf of an estate, any court or division thereof in which such action is pending and which has jurisdiction thereof may ... make an order approving such compromise or settlement." *See also Moore*, *supra*, 580 A.2d at 1141 ("Where a survival action is pending, ... a settlement thereof may be approved by the court in which it is pending....").

20 Pa.C.S. §3323 "contemplates a judicial inquiry into the propriety of a proposed compromise or settlement by the estate, whether or not it is contested, consistent with the court's supervisory jurisdiction over decedents' estates, and an adjudication based thereon." *Krause v. B&O R.R.*, 33 Pa. D. & C.3d 458, 466 (Pa. Ct. Comm. Pl. 1983); *see also Moore*, *supra*, 580 A.2d at 1141 ("[A] court may refuse to approve a settlement of a survival action which is inadequate."). In performing this inquiry, the court must "exercise independent judgment on the whole case," and decide whether the proposed settlement is "fair and reasonable under the circumstances." *Krause*, *supra*, 33 Pa. D. & C.3d at 466 (quotation marks omitted). Because "[t]he court must independently evaluate the proposed

settlement petition," the petition must "provide the court with sufficient information on which to base its determination," including "all relevant facts and the reasons why the administrator of the ... estate believes the settlement is desirable and why it is in the estate's best interest to settle the action." *Rodi v. Williams*, 2015 WL 1863006, at *2 (M.D. Pa. Apr. 23, 2015) (quotation marks omitted). "Relevant facts include how many medical bills and liens regarding the care of the deceased ... are to be handled by the settlement." *Id*. Courts also analyze the strengths and weaknesses of the particular case, including whether the plaintiffs face any "issues of proof that could hamstring their efforts to establish liability" because these issues go to the settlement value of the case. *Tamasy v. Yough Sch. Dist.*, 2019 WL 5864893, at *2 (W.D. Pa. Nov. 8, 2019).

b. <u>The Settlement is Overall Adequate, Fair, and Reasonable</u>

Under the unique circumstances of this case, there are almost no non-adversarial direct witnesses to support Carter's underlying claims. In order to persuade a jury to either find liability or award more damages than the amount of this settlement relies almost entirely on the cross-examination of the defendants and witnesses affiliated with either. As is often the case, trial of this case is fundamentally more difficult without any testimony from the decedent.

Moreover, Carter had many health issues at the time of his death. While only COPD was associated with his death, those other conditions would likely

limit any projection on his life expectancy had he not passed away on December 24, 2022. Any award for damages for pain and suffering would depend entirely on the jury accepting Carter's medical causation expert, as there is no other available evidence to support such a finding. While Plaintiff remains confident that she would successfully prove the prison was very cold when Carter died, any finding by a jury connecting those conditions to his death must necessarily rely on the same medical causation expert. Counsel anticipates at trial that defendants would offer expert testimony that even if the jail was cold, that did not cause his death.

Litigation of this case has been time-consuming and expensive, having been fully litigated to the point of being nearly trial-ready in the District Court. Trial too would have been lengthy and costly, requiring the participation of many witnesses, including experts. An additional "expense" the court must consider is the emotional expense of this case, and that would be greatly borne by Richard Carter's daughter, Shakiyla. *See Romano v. United States,* 2020 WL 7364453, at *3 (E.D. Pa. Dec. 15, 2020). Moreover, trial itself would not necessarily have yielded certainty, as a verdict in favor of Plaintiff could still be subject to a further appeal on a variety of grounds.

Counsel in this matter have represented many plaintiffs in prison conditions cases, and tried many of their cases. Applying their collective experience, it is

their considered opinion that this case presents significant trial risk as a result of the underlying facts giving rise to it.

The Estate has separately set forth its position on why the settlement is desirable in the attached Declarations.

Given the foregoing complexities and difficulties of trial of this case, Plaintiff submits that the amount of the settlement is fair and reasonable.

c. <u>Plaintiff's Proposed Apportionment of the Settlement is Reasonable and Adequate</u>

"Survival actions under the Pennsylvania Survival Act, 42 Pa. C.S. § 8302, are brought by the administrator of the estate to benefit the decedent's estate." *Rodi*, *supra*, 2015 WL 1863006, at *1. "Survival action damages compensate the decedent's estate for losses from the tort," and account for "decedent's pain and suffering, loss of gross earning power from the date of injury until death, and probable earning during his life expectancy minus the probable cost of maintaining himself and wrongful death damages." *Smith v. Sandals Resort Int'l, Ltd*., 709 F. Supp. 2d 350, 358 (E.D. Pa. 2010). "Survival action proceeds are divided among the heirs of the decedent." *Id*.

Wrongful death "damages compensate the spouse, children, or parents of decedent for the pecuniary loss," which includes "the value of the services, society, and comfort the relatives would have received from the decedent." *Id*. at 356.

Here, Plaintiffs propose allocating 10% of the settlement proceeds to the survival action. Pennsylvania policy generally "favors wrongful death beneficiaries over estate beneficiaries." *Id.* at 358. Thus, courts have "approved settlements allocating large percentages to the wrongful death action over the survival action." *Id.* [T]there is nothing inherently suspect or improper about a settlement allocation favoring wrongful death beneficiaries." *Tamasy*, *supra*, 2019 WL 5864893, at *2–3 (finding allocation of settlement funds reasonable even though the parties allocated the entire amount to the wrongful death claim); *see also Rodi*, *supra*, 2015 WL 1863006, at *3 (same); *Evanoff v. Marsh USA, LLC*, 2024 WL 3330571, at *2 (E.D. Pa. July 8, 2024) (approving a 10% allocation of the net settlement proceeds to survival); *Coleman v. United States*, 2005 WL 2230319, at *2 (E.D. Pa. Sept. 13, 2005) (same); *Romano*, *supra*, 2020 WL 7364453, at *4 (E.D. Pa. Dec. 15, 2020) (approving a 40% allocation of the net settlement proceeds to survival).

Prior to the filing of the instant motion, the Pennsylvania Department of Revenue considered the proposed allocation of 10% survival – 90% wrongful death, and has approved that allocation. Ex. 2.

Shakiyla is the sole beneficiary of this settlement regardless of the allocation. Here, there were no hospital, nursing, or medical expenses, and she

incurred only minimal of pocket funeral or administration expenses. Declaration of Shakiyla Carter, ¶9.

The value of the survival claim is primarily based on Mr. Carter's pain and suffering from the time around the initiation of a medical emergency until his death. He was not employed at the time of his death, and the Estate did not pursue any economic damages claim.

While approximately 45 minutes elapsed from the start of the emergency until the pronouncement of his death, any recovery for pain and suffering attendant to his death would be entirely decided by a jury relying on the competing testimony of the party's experts. The undisputed evidence was that he was only briefly, and barely, conscious before emergency medical treatment was administered; that he was conscious of his pain and suffering for any significant amount of time and to any significant degree was disputed by defendants.

## III. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests the Court approve the allocation of 10% of the net settlement proceeds to the survival action.

Respectfully submitted,

WILLIAMS CEDAR

*/s/ CHRSITOPHER MARKOS*
By: Christopher Markos, Esquire

PA Id. No. 308997
One South Broad Street
Suite 1510
Philadelphia, PA 19107
P: 215-557-0099
F: 215.557.0673
cmarkos@williamscedar.com

*Attorneys for Plaintiff*

Dated: March 31, 2026

**CERTIFICATE OF CONCURRENCE**

I, Christopher Markos, certify that I have conferred with counsel for defendants. Counsel for PrimeCare concurs with this motion, counsel for Dauphin County has not yet given an indication of whether or not there is concurrence.

Respectfully submitted,

WILLIAMS CEDAR

*/s/ Christopher Markos*

By: Christopher Markos, Esquire
One South Broad Street
Suite 1510
Philadelphia, PA 19107
P: 215-557-0099
F: 215.557.0673
cmarkos@williamscedar.com
*Attorney for Plaintiff*

Dated: March 31, 2026

**CERTIFICATE OF SERVICE**

I, Christopher Markos, Esquire, hereby certify that on this date, I served a copy of the foregoing document, via the Court's Electronic Case Filing system, and that it is available for viewing and downloading therefrom by Counsel for defendants.

*/s/ Christopher Markos*

Christopher Markos

Dated: March 31, 2026